McMillen et al. v. The County Judge and Treasurer of Lee County.

McMILLEN *et al. v.* THE COUNTY JUDGE and TREASURER

OF LEE COUNTY.

The legislature possessed the power to enact the act "legalizing the issue of county, city and town corporation bonds in the counties of Lee and Davis." Statute of 1857, chapter 258. And that statute had the effect of legalizing the vote taken in Lee county in 1856, by which the people of that county determined to issue bonds and take stock in three several railroad companies, then constructing their roads through said county.

Where the legislature possesses the power to authorize an act to be done, it may by a retrospective act, legalize and declare valid, any informality or irregularity in the exercise of the power thus conferred.

The act "legalizing the issue of county, city, and town corporation bonds in the counties of Lee and Davis," (Statute of 1857, chapter 258), is not in violation of section six of the first article of the constitution.

*Appeal from the Lee District Court.*

TUESDAY, JUNE 22.

IN CHANCERY.   The county of Lee, at an election held in 1856, by a majority of the votes cast, determined to issue bonds and take stock in three several railroad companies, then constructing their roads through said county. At the December term, 1856, of this court, said election

was held irregular, and it was determined that, as conduct-
ed, it conferred no power upon the county judge to issue
the proposed bonds. On the 29th day of January, 1857,
the legislature passed "An act legalizing the issue of coun-
ty, city and town corporation bonds in the counties of Lee
and Davis." The county judge proceeded to take the
stock and issue the bonds referred to in said votes and law.
A tax was levied to meet the interest, as in said vote con-
templated, and the petitioners, voters and tax-payers in
said county, filed their bill, praying an injunction to re-
strain the collection of the same. Respondents demurred
to the bill. This demurrer was sustained, the injunction
dissolved, and complainants appeal.

*F. Semple*, for the appellants.

*J. M. Beck* and *J. C. Hall*, for the appellees.

WRIGHT, C. J.—The power of a county to take stock in
a company, organized for the purpose of constructing a
railroad, or other public improvement, through the same,
has been recognized by a majority of this court, in the
following cases : *Dubuque County* v. *Dubuque and Pa-
cific Railroad Company*, 4 G. Greene, 1 ; *Leech* v. *Bissell,
County Judge of Cedar County*, 4 G. Greene, 328 ; *Clapp*
v. *Cedar County*, 5 Iowa, 15 ; *Ring* v. *Johnson County*,
*ante*, 265. While I have never concurred in this ruling, and
still deny the power, yet it may now, as I suppose, be re-
garded as settled. Assuming this much, I think but one
question remains to be considered in this case; and that
is, whether the legislature had the power to pass the act
of January 29th, 1857, and did it have the effect of legal-
izing the vote taken.

The language of the law is, "that all votes heretofore
taken in the counties of Lee and Davis, in the form of a
joint or several proposition, whether said counties will aid
in the construction of one or more railroads, specifying the
amount to be given to each, as a joint or several proposi-

tion, and the subscriptions made by said counties, and the bonds of said counties issued in pursuance of said votes and subscription, or hereafter to be issued, are hereby declared to be legal and valid; and that all such bonds issued, and hereafter to be issued, in pursuance of such votes and subscriptions, shall be a valid lien upon the taxable property of said county." It is also provided that the county judge, or other proper authority, shall levy and collect a tax to meet the payment of the principal and interest of such bonds; and that said counties shall not be allowed to plead, in any suit brought to recover the principal or interest of such bonds, that the same are irregular and invalid, in consequence of the informalities cured by said act. And, finally, all bonds issued by said counties for subscription to railroads, in pursuance of any vote of the people, are declared to be valid, and of full legal and binding force and effect, notwithstanding any informality or irregularity in the submission of the question to the vote of the people.

By reference to the case of *McMillen et al.* v. *Lee County*, 3 Iowa, 311, it will be seen that three propositions were submitted at the same time to the voters of Lee county, but that the subscription was not to be made to either of the companies, unless there was a majority of the votes cast in favor of each and all of them. This was held to be irregular, and it is this irregularity which was designed to be cured by the legislature. And it seems to me very clear, that if the legislature can authorize the counties to make such subscriptions, by a vote of the people, it can certainly legalize and cure any informality or defect in taking the vote. Having the power, the legislature could have authorized in advance, the county judge to submit the question as he did. He submitted it, however, in a manner not provided for in the law, and subsequently this submission is legalized and declared valid. I cannot see how it can change the matter, whether the power is given beforehand, or the informality cured subsequently. The right of the legislature to pass such laws, retrospective in

their character, cannot, as I think, be seriously question-
ed.  The policy of such legislation is another thing, with
which I have nothing to do.  The case of *The City of
Bridgeport* v. *The Housatonic Railroad Company*, 15
Conn., 475, is in point.  See, also, 3 Dallas, 385 ; 8 Pet.,
110 ; 2 Ib., 412, 661.

It is urged, however, that the act of January 29th, 1857,
is unconstitutional.  It is claimed to be so, because it legal-
izes the votes and bonds issued in Davis and Lee counties
—does not embrace all the counties—and cannot, there-
fore, have a uniform operation throughout the State.  The
language of the constitution, (section 6, Art. 1), is that "all
laws of a general nature shall have a uniform operation."
It will not be claimed, certainly that this law is of a gene-
ral nature.  And thus, we see that this objection is with-
out foundation.

It is also urged that the curative act is not a law, but a
legislative sentence, and that the constitution confers no
power to thus legislate.  The true inquiry, however, is,
whether the exercise of the power is inhibited.  In ascer-
taining the power of the legislature under the constitution,
we look, not to what the instrument authorizes to be done,
but to what is prohibited.  In this case, there is no provis-
ion prohibiting, either expressly, or by implication, such
legislation.

The other objections relate to the power of the legisla-
ture to authorize a county to make such subscriptions.
For reasons before stated, I need not refer to these.  While
I concur in denying this power, I am of the opinion that
it was perfectly competent for the legislature to legalize
and make valid any informality or defect in the vote taken.

Decree affirmed.